tificate is concerned, the services rendered by the relator have been "excellent" as compared with some others who are rated "good," or "very good," and yet, the length of service being brought into the calculation, the man who is rated "good" may have by far the higher claims upon the preferment. One who has been good in all things relating to the service for a long period of years, who has been faithful and reliable through all the varied experiences, may be far better entitled to promotion than one who has been on good behavior for a few months and has convinced his superior officer that in fidelity he is "excellent," etc.

A mandamus is proper only in the presence of an absolute legal duty, and, the relator having failed to show that there was any legal duty on the part of the Municipal Civil Service Commission to accept the certificate produced by the relator, there is no ground for the relief demanded.

The order appealed from should be affirmed, with $10 costs and disbursements. All concur.

---

(68 Misc. Rep. 385.)

### ENTON v. NASSAU ELECTRIC R. CO.

### SAME v. BROOKLYN, Q. C. & S. R. CO.

(Supreme Court, Trial Term, Kings County. July 20, 1910.)

1. STREET RAILROADS (§ 49*)—LEASE—TRANSFER BY LESSEE—RIGHTS PASSING.
    Where a street railroad company had the right under its lease to charge an additional fare to a certain point, a sublease or an assignment of the lease would carry with it the same right.
        [Ed. Note.—For other cases, see Street Railroads, Dec. Dig. § 49.*]

2. CARRIERS (§ 20*)—PASSENGER RATES—RIGHT OF CARRIER TO COMPENSATION.
    Even if an oral agreement, under which one railroad company ran its trains over the tracks of another, was invalid for failure to comply with Railroad Law (Laws 1892, c. 676) § 78, requiring agreements for the use of tracks of another railroad company to be under the corporate seals of the parties, etc., a passenger carried over such tracks was not entitled to recover the penalty, given by section 39, for taking more than the legal rate of fare; the mere invalidity of the agreement conferring no right to be carried free, the use of the tracks being with the owner's consent.
        [Ed. Note.—For other cases, see Carriers, Dec. Dig. § 20.*]

3. CARRIERS (§ 12*)—PASSENGER RATES—REGULATION.
    In spite of Railroad Law (Laws 1884, c. 252) § 13, as amended by Laws 1890, c. 565, § 101, and Laws 1892, c. 676, § 101, providing that no corporation constructing a railroad under that act shall charge more than five cents for one continuous ride from one point on the road, or on any road, line, or branch operated by it and under its control, to another or to a point on any connecting line within the limits of any incorporated city or village, the Nassau Electric Company may charge a second five-cent fare for the ride in its trains from its own terminus to Coney Island, over the tracks of the Brooklyn Heights Railroad Company.
        [Ed. Note.—For other cases, see Carriers, Dec. Dig. § 12.*]

4. CARRIERS (§ 20*)—PASSENGER RATES—REGULATION—ENFORCEMENT—PENALTY.
    Under Railroad Law (Laws 1892, c. 676) § 39, providing that any railroad corporation which shall ask or receive "more than the legal rate of fare" shall be liable to a penalty, a railroad company which is running

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

its trains over a piece of road without legal authority, and which is hence not entitled to exact a fare therefor, cannot be held liable to the penalty, for under the conditions there could be no "lawful rate," and, as a lawful rate implies a limitation, there being no limitation, there could be no excess.

[Ed. Note.—For other cases, see Carriers, Dec. Dig. § 20.*]

Actions by Louis Enton against the Nassau Electric Railroad Company and against the Brooklyn, Queens County & Suburban Railroad Company. Judgments for defendant.

Robert Stewart, for plaintiff.
George D. Yeomans, for defendant.

CRANE, J. The Brooklyn Heights Railroad Company, by its lease in 1899 from the Prospect Park & Coney Island Railroad Company of the steam road running from Ninth avenue and Twentieth street to Coney Island, acquired the right to charge a five-cent fare over this route, beside the fare collected within the former city limits. Enton v. Coney Island & Brooklyn R. R. Co., 136 App. Div. 801, 121 N. Y. Supp. 793; Barnett v. B. H. R. R. Co., 53 App. Div. 432, 65 N. Y. Supp. 1068. Under these decisions, if the Brooklyn Heights Railroad Company had leased or assigned the lease to the defendant, Nassau Electric Railroad Company, then the latter company would have had the power to charge an extra fare of five cents for the ride from Ninth avenue and Twentieth street to Coney Island.

The Nassau Electric Railroad Company in 1906 ran its cars over this steam railroad of the Prospect Park & Coney Island Railroad Company by virtue of an oral contract with or consent of the Brooklyn Heights Railroad Company, but had no written agreement, pursuant to section 78 of the railroad law (Laws 1892, c. 676). That section provides that contracts for the use of roads or routes of other companies shall be executed by the contracting corporations under the corporate seal of each corporation, and, if the road be leased for longer than one year, stockholders owning at least two-thirds of the stock must approve thereof. The plaintiff claims that the oral agreement between the Brooklyn Heights Railroad Company and the Nassau Electric Railroad Company, whereby the cars of the latter ran to Coney Island, was illegal and void, because it was not in writing, sealed with the corporate seals, and that therefore the charge of five cents to him for a ride over this route was without authority and excessive, subjecting the defendant to the penalty of section 39 of the railroad law, for which this action is brought.

But it is unnecessary to decide whether the agreement be void or not, for, conceding for the purposes of this suit that it was, the plaintiff cannot claim that he had the right to ride free. Very inconsistent is it to assert the illegality of the defendant's operation over this route, and then claim a legal obligation to carry him free of charge. If the defendant had no right to run its cars, it was under no obligation to carry passengers. This alleged oral contract or trackage agreement might not have been binding on the parties to it. The defendant

might have been prevented by appropriate remedy from using the Coney Island tracks; but when it did use them, with the consent of the owner, it was not bound to carry passengers for nothing.

But the plaintiff says the five-cent fare which the defendant legally charged over its own line covered the extended ride over the Coney Island line. If it had had the right to run over this Coney Island route by written contract made pursuant to section 78, it could legally have charged an extra fare of five cents according to the above decisions. One fare would have carried passengers to Ninth avenue and Twentieth street, and the other fare from that point to Coney Island. Because it usurped authority, as the plaintiff claims, to run to Coney Island, would not make the rightful charge of five cents a legal charge for the usurped portion. If it were an unauthorized run, then, says the plaintiff, there could be no legal charge; consequently the five cents charged for a ride over other portions of the defendant's line could not cover it.

Conceding, therefore, that the defendant had no right to run to Coney Island, and that the five-cent fare over its other lines did not cover this route, there was no obligation to carry the plaintiff free. While the cars ran, and he insisted on riding in them, he was bound to pay the charge demanded. If the plaintiff had been ejected, could the defendant have pleaded, when sued therefor, that it was under no obligation to carry him? The plaintiff's reasoning would lead to this conclusion, because, if the run were illegal, there was no obligation to carry. The better reasoning would be that, so long as the defendant assumed the right to run, it was charged with the obligation to carry passengers for the same fare which it could have charged if it had legally contracted for the right of way.

The claim of the plaintiff that section 101 of the railroad law compels the defendant to carry passengers to Coney Island for five cents is refuted by the two authorities above cited. The road in question was constructed and operated by the Prospect Park & Coney Island Railroad Company prior to 1884. At the time of the defendant's incorporation and the acquiring of its franchises the limits of the then city of Brooklyn did not extend to the ocean, while the Prospect Park & Coney Island Railroad was in operation transporting passengers from the city to the beach. When in 1894 the city touched the sea, section 101 of the railroad law (section 13, c. 252, Laws 1884, as amended by chapter 565, Laws 1890, and by chapter 676, Laws 1892) did not require the companies using the Prospect Park & Coney Island tracks to charge but one fare of five cents.

Assuming, however, that we go a step further, and concede the illegality of the defendant's run to Coney Island, and that it had no right to charge the plaintiff for his ride, as there had been no fare fixed by law, yet the plaintiff cannot recover the penalty sued for. Section 39 of the railroad law reads:

"Any railroad corporation which shall ask or receive more than the lawful rate of fare  *  *  *  shall forfeit fifty dollars," etc.

If the defendant had no right to run to Coney Island, there was no lawful rate fixed. The plaintiff in effect claims that lawful rate in-

cludes no rate. In the absence of any regulation whatever, how can there be an excess? Lawful rate implies a limit. If there be no limit, what is the lawful rate?

Judgment in these cases is given for the defendant, for this opinion also applies to Enton v. Brooklyn, Queens County & Suburban Railroad Company.